
JMK:DG/MSM/AS
F. #2017R00930

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ APR - 4 2019 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -

GUSTAVO TRUJILLO,

          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

I N F O R M A T I O N

Cr. No. 19-00134
(T. 18, U.S.C., §§ 371, 1956(h), 981(a)(1)(C),
982(a)(1), 982(b)(1) and 3551 et seq.;
T. 21, U.S.C., § 853(p); T. 28, U.S.C.,
§ 2461(c))

THE UNITED STATES CHARGES:

At all times relevant to this Information, unless otherwise indicated:

INTRODUCTION

I.   The Defendant and Relevant Individuals and Entities

       1.    The defendant GUSTAVO TRUJILLO was an Ecuadorian citizen who resided in Florida since approximately May 2018. He was employed in operations and comptroller positions in the Ecuadorian office of a financial services firm ("Financial Services Firm"), the identity of which is known to the United States, for most of the period from approximately 2005 to 2017.

       2.    Co-Conspirator 1, an individual whose identity is known to the United States, was a dual United States and Ecuadorian citizen who resided in Florida. Co-Conspirator 1 was a registered United States investment adviser. Co-Conspirator 1 was a "domestic concern" as that term is defined in the Foreign Corrupt Practices Act ("FCPA"), Title 15, United States Code, Section 78dd-2(h)(1).



3. Ramiro Andres Luque Flores ("Luque") was an Argentinian national who previously lived in Ecuador and then, beginning in or about 2016, resided in Florida. He owned and controlled an Ecuadorian company called GalileoEnergy S.A. ("Galileo"). Galileo specialized in the disposal of hazardous waste from oil and gas production. Between December 2012 and late 2016, Galileo entered into five contracts and additional supplemental contracts with Empresa Pública de Hidrocarburos del Ecuador ("PetroEcuador").

4. Jose Larrea was a United States citizen who resided in Ecuador and Florida. He was a financial adviser and a childhood friend of Co-Conspirator 1.

5. Financial Services Firm was a Delaware holding company that owned and operated several financial services entities based in the United States and abroad. In or about 2012, Financial Services Firm de-registered as a United States-registered investment adviser and incorporated in Bermuda. Financial Services Firm and related entities maintained offices in, among other places, Florida, Ecuador and Uruguay. Co-Conspirator 1 was a minority owner of, and a financial adviser for, Financial Services Firm from approximately 2006 to at least 2017.

6. "Real Estate Company," the identity of which is known to the United States, was a luxury real estate development company based in Florida. Real Estate Company was owned and operated by a number of individuals who owned and operated Financial Services Firm.

7. "Escrow Agent Company," the identity of which is known to the United States, was an escrow agent that was formed and registered in the British Virgin Islands and had a bank account in the Cayman Islands (the "Escrow Agent Company Account"). Co-Conspirator 1 and other owners and employees of Financial Services Firm (the "Co-Conspirators") used the Escrow Agent Company to funnel investments to private investment funds in the Cayman Islands created by some of the individuals who owned Financial Services Firm, purportedly for

the purpose of developing real estate in South Florida that was owned by Real Estate Company. Co-Conspirator 1 had the authority to direct funds into and out of the Escrow Agent Company Account.

8. PetroEcuador was the state-owned oil company of the Republic of Ecuador. PetroEcuador was wholly owned and controlled by the government of Ecuador and performed a function that Ecuador treated as its own, and thus was an "instrumentality" of the Ecuadorian government as that term is used in the FCPA, Title 15, United States Code, Sections 78dd-2(h)(2)(A) and 78dd-3(f)(2)(A).

9. "Shell Company," the identity of which is known to the United States, was a shell company incorporated in Curacao. Shell Company had a bank account in Curacao (the "Shell Company Account").

10. Madison Assets LLC ("Madison") was a shell company incorporated in the Cayman Islands. Madison had a bank account in New York, New York (the "Madison Account"). In or about December 2015, ownership of Madison was transferred to a United Kingdom shell company that was owned and controlled by the defendant GUSTAVO TRUJILLO.

II. The Wire Fraud Scheme

11. In or about and between 2005 and 2007, several individuals who operated Real Estate Company, and whose identities are known to the United States, began operating Financial Services Firm and several private investment funds in the Cayman Islands (the "Cayman Islands Funds"). Financial Services Firm sold shares of the Cayman Islands Funds to clients and potential clients for the ostensible purpose of developing Real Estate Company's projects in South Florida.

12. In or about 2007, Real Estate Company's projects began suffering financial difficulties that worsened over the next decade. Despite knowing of the failing financial health and eventual insolvency of those real estate projects, the Co-Conspirators continued to raise new debt, purportedly for the development of real estate, by, among other things: (a) further incentivizing Financial Services Firm's financial advisers to aggressively sell shares in the Cayman Islands Funds to clients and potential clients; (b) making false and fraudulent statements to Financial Services Firm's financial advisers and auditors, and others, regarding the financial health of these investments; and (c) omitting material information regarding the shared ownership interests, and resulting conflict of interest, among Real Estate Company, Financial Services Firm and the Cayman Islands Funds.

13. By the end of 2015, while at least approximately $156 million was invested in the Cayman Islands Funds, Real Estate Company was at least $200 million in debt, and its properties remained mostly undeveloped and unsold. The investment funds that were purportedly raised for the development of real estate were instead fraudulently used by the Co-Conspirators: (a) to repay older debts; (b) to capitalize the consistently unprofitable Real Estate Company and Financial Services Firm businesses; and (c) for their personal use and benefit.

14. In or about 2015, the defendant GUSTAVO TRUJLILLO became involved in the scheme. Among other things, in approximately late 2015, the Co-Conspirators who owned Real Estate Company, Financial Services Firm and the Cayman Islands Funds asked TRUJILLO to become the beneficial owner of Madison. After complying with that request, TRUJILLO, at the direction of certain of the Co-Conspirators, knowingly used the Madison Account to execute the sale of investments in the Cayman Islands Funds to other unwitting Financial Services Firm clients in order to make interest payments to Financial Services Firm

clients on their investments or to pay existing clients of Financial Services Firm who complained about the performance of their investments. TRUJILLO executed these sales knowing that the real estate projects purportedly funded by the Cayman Islands Funds were insolvent and had no reasonable prospect of generating returns, and that Financial Services Firm did not have the funds to repay its clients.

15. As Financial Services Firm and Real Estate Company's debts continued to rise without generating adequate returns to meet past obligations, the Co-Conspirators resorted to other fraudulent means to gain access to funds to perpetuate the scheme. For example, Co-Conspirator 1 and other Co-Conspirators, for a fee, knowingly used Real Estate Company, Financial Services Firm and the Cayman Islands Funds to launder some of their clients' illicit funds, including funds involved in the bribery and money laundering scheme set forth below, and in some instances used those illicit funds to perpetuate the wire fraud scheme.

16. The defendant GUSTAVO TRUJILLO, at the direction of Co-Conspirator 1 and others, created false and fraudulent bank statements that purported to show that the Financial Services Firm clients' funds were safely invested in the Cayman Islands Funds. Similarly, TRUJILLO, at the direction of others, made purported interest payments to clients to deceive them into believing that their investments were generating returns, when in fact their money was not invested in real estate and was not generating returns.

III. The Bribery and Money Laundering Scheme

17. In or about and between 2013 and 2016, Galileo, which was owned and controlled by Luque, obtained and retained contracts from PetroEcuador by promising to pay bribes, and paying bribes, to PetroEcuador officials. As a result of the bribery scheme, PetroEcuador paid Galileo approximately $27.8 million into bank accounts designated by Co-Conspirator 1, including the Escrow Agent Company Account. Co-Conspirator 1 and others

then transferred those funds to various offshore shell company accounts that were beneficially owned and controlled by PetroEcuador officials, as well as to other offshore shell company accounts, as payment for their role in the scheme.

18. In or about March 2015, the Escrow Agent Company Account closed, which caused the Co-Conspirators to open Shell Company Account to receive PetroEcuador proceeds due on Galileo's contracts. In or about and between July 2015 and May 2016, Shell Company Account received approximately $8 million of Galileo's PetroEcuador contract proceeds, of which approximately $2.9 million was then transferred to the Madison Account. At the direction of others, the defendant GUSTAVO TRUJILLO wired and caused to be wired at least $2.3 million of the PetroEcuador contract proceeds from the Madison Account to repay certain Financial Services Firm clients and other debts.

19. By in or about mid-2016, it had been publicly reported that Luque had paid bribes to obtain and retain Galileo's contracts with PetroEcuador.

20. In or about and between November 2016 and December 2016, after Luque requested the balance of the PetroEcuador contract proceeds from Co-Conspirator 1 and Larrea, the defendant GUSTAVO TRUJILLO knowingly facilitated at least four wire transfers, totaling approximately $904,000, from the Madison Account to a bank account in the name of Larrea, in order to conceal and disguise the nature, location, source, ownership and control of the proceeds of the bribery of PetroEcuador officials by Luque.

21. In order to make the wire payments to Larrea for the benefit of Luque, the defendant GUSTAVO TRUJILLO used the Madison Account to facilitate the sale of investments in the Cayman Islands Funds to approximately 18 unwitting Financial Services Firm clients.

## COUNT ONE
(Conspiracy to Commit Wire Fraud)

22. The allegations contained in paragraphs one through 21 are realleged and incorporated as if fully set forth in this paragraph.

23. In or about and between July 2015 and April 2017, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant GUSTAVO TRUJILLO, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud one or more clients and potential clients of Financial Services Firm, and to obtain money and property from them by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

24. In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendant GUSTAVO TRUJILLO, together with others, committed and caused to be committed, among others, the following:

## OVERT ACTS

(a) On or about September 12, 2016, TRUJILLO caused a transfer of approximately $320,560 of Luque's PetroEcuador proceeds from the Madison Account in New York, New York to an account at another financial services firm, the identity of which is known to the United States, for the purpose of paying three Financial Services Firm clients.

(b) On or about November 23, 2016, TRUJILLO sent approximately $353,000 of Financial Services Firm client funds via wire, through the Eastern District of New

York and elsewhere, from the Madison Account in New York, New York to Larrea's bank account in Miami, Florida to repay Luque some of his PetroEcuador contract proceeds.

(c)     On or about December 19, 2016, TRUJILLO sent approximately $134,000 of Financial Services Firm client funds via wire, through the Eastern District of New York and elsewhere, from the Madison Account in New York, New York to Larrea's bank account in Miami, Florida to repay Luque some of his PetroEcuador contract proceeds.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## COUNT TWO
(Conspiracy to Commit Money Laundering)

25.    The allegations contained in paragraphs one through 21 are realleged and incorporated as if fully set forth in this paragraph.

26.    In or about and between July 2015 and April 2017, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant GUSTAVO TRUJILLO, together with others, did knowingly and intentionally conspire to: (i) conduct one or more financial transactions, to wit: wire transfers of money, which transactions in fact involved the proceeds of specified unlawful activity, to wit: felony violations of the FCPA, Title 15, United States Code, Sections 78dd-2 and 78dd-3, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i); and (ii) transport, transmit and transfer monetary instruments and funds from a place in the United States to and through a place outside the United States and to a place in the United States from and through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, to wit:

felony violations of the FCPA, Title 15, United States Code, Sections 78dd-2 and 78dd-3, contrary to Title 18, United States Code, Section 1956(a)(2)(A).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION AS TO COUNT ONE

27. The United States hereby gives notice to the defendant that, upon his conviction of the offense charged in Count One, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offense to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offense.

28. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

10

## CRIMINAL FORFEITURE ALLEGATION AS TO COUNT TWO

29. The United States hereby gives notice to the defendant that, upon his conviction of the offense charged in Count Two, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense, or any property traceable to such property.

30. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other

11

property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

BY: _____
ACTING UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. O.136

ROBERT ZINK
ACTING CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

DEBORAH L. CONNOR
CHIEF
CRIMINAL DIVISION, MONEY LAUNDERING
AND ASSET RECOVERY SECTION
U.S. DEPARTMENT OF JUSTICE

11

property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

BY: _____
ACTING UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. 0.136

For ROBERT ZINK
ACTING CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

_____
DEBORAH L. CONNOR
CHIEF
CRIMINAL DIVISION, MONEY LAUNDERING
AND ASSET RECOVERY SECTION
U.S. DEPARTMENT OF JUSTICE